# EXHIBIT A

Direction sheet for Sherrif          *Mailed 11/16/09 PG*          Page 1 of 1

CM

| William P Mullen<br>Sheriff | **ALLEGHENY COUNTY SHERIFF'S DEPARTMENT**<br>436 GRANT STREET<br>PITTSBURGH, PA 15219-2496<br>PHONE (412) 350-4700<br>FAX (412) 350-6388 | Joseph A. Rizzo<br>Chief Deputy |
|---|---|---|

PLAINTIFF: Herbert Elwood Gilliland III

DEFT: Chad Hurley

GARNISHEE:

DISTRICT:

ADDRESS: 901 Cherry Avenue
San Bruno, CA 94066

SERVICE ADDRESS DIRECTION:

CASE #: GD-09-021018
EXPIRES: 12/13/2009 11:59:59 PM

○ SUMMONS/PRAECIPE
○ SEIZURE OR POSSESSION
● NOTICE AND COMPLAINT
○ REVIVAL OR SCI FA
○ INTERROGATORIES
○ EXECUTION – LEVY OR GARNISHEE
○ OTHER

MUNICIPALITY/CITY WARD: /

ATTY Name: Pro Se

ATTY ADDRESS:

ATTY PHONE:

TYPE OF SERVICE:

○ Personal  ○ Person In charge  ○ Deputize  ● Mail  ○ Posted  ○ Other  ○ Seize & Stored  ○ First Class Mail  ○ Publication

Now  I, the SHERIFF OF ALLEGHENY COUNTY, PA do hereby deputize the Sheriff of ___
County to execute this Writ and make return thereof according to law

"--Is the Sheriff instructed to take manual possession of the property? _____ If "yes" bond in the amount of $_____ must be posted prior to levy."

Seize, levy, advertise and sell all the personal property of the defendant on the premises located at:_____
MAKE          MODEL          MOTOR NUMBER          SERIAL NUMBER          LICENSE NUMBER

**SHERIFF'S OFFICE USE ONLY**
I hereby CERTIFY and RETURN that on the _____ day of_____ 20__ at___ o'clock, AM/PM. Address Above/Address Below, County of Allegheny, Pennsylvania

I have served in the manner Described below:_____
[ ] Defendant(s) personally served
[ ] Adult in charge of Defendant's residence who refused to give name or relationship
[ ] Adult family member with whom said Defendant(s) reside(s). Name & Relationship
[ ] Manager/Other person authorized to accept deliveries of U.S Mail    [ ] Agent or person in charge of Defendant(s) office or usual place of business.
[ ] Other_____                                      [ ] Property Posted_____
Defendant not found because:[ ] Moved [ ] Unknown [ ] No Answer [ ] Vacant [ ] Other
      [ ] Certified Mail [ ] Receipt_____   [ ] Envelope Returned_____  [ ] Neither Receipt or envelope; writ expired _____
         [ ] Regular Mail   Why: _____
You are hereby notified that on_____, 20__, levy was made in the case of_____
Possession/Sale has been set for_____ 20__ at_____ o'clock
**YOU MUST CALL DEPUTY ON THE MORNING OF SALE/POSSESSION BETWEEN 8:30-9:30 A.M.**
ATTEMPTS_____/_____/_____/_____/

Additional Costs Due $_____ This is placed On Writ when returned to Civil Division. Please check before Satisfying Case

NOTICE OF SUIT TO SHERIFF OF ALLEGHENY CO.
You are hereby notified that on  11/13/2009
a COMPLAINT has been filed in this case
and you are required to serve the same on or before the
 12/13/2009
Kate Barkman, Director
Department of Court Records

# COMPLAINT IN CIVIL ACTION

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| Plantiff(s)<br>**Gilliland III, Herbert Elwood**<br><br><br>Vs<br><br>Defendant(s)<br>**Hurley, Chad**<br>**Chen, Steve** | Case Number :<br>**GD - 09 - 021018**<br><br>Type of pleading:<br>**COMPLAINT**<br><br>Filed on behalf of:<br>**Herbert Elwood Gilliland III**<br><br>**Herbert Elwood Gilliland III**<br>(Name of the filing party)<br><br>[ ] Counsel of Record<br>[X] Individual, If Pro Se<br><br>Name, Address and Telephone Number :<br>**Herbert Elwood Gilliland III**<br>,<br><br>Attorney's State ID: **PROSE** |
|---|---|

**Records**                                          **Kate Barkman, Director, Department of Court**

IN THE COURT OF COMMON PLEAS OF
ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| HERBERT ELWOOD GILLILAND, III | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | G.D. NO. 09-021018 |
| | ) | |
| V. | ) | |
| | ) | CODE: _____ |
| CHAD HURLEY and STEVE CHEN | ) | |
| | ) | |
| | ) | JURY DEMANDED |
| Defendants. | ) | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW Herbert Elwood Gilliland, III ("Plaintiff") complaining of Chad Hurley ("Hurley") and Steve Chen ("Chen") (collectively, "Defendants") and asserting the following allegations and claims for relief:

**I.**

**PARTIES**

1. Plaintiff Herbert Elwood Gilliland, III is an individual who maintains his citizenship in the state of Pennsylvania. He resides in Pittsburgh, Allegheny County, Pennsylvania.

2. Defendant Chad Hurley, an individual, is believed to be a citizen of the state of California. He can be served with process at the offices of YouTube, LLC a wholly owned subsidiary of Google Inc., 901 Cherry Avenue, San Bruno, CA 94066.

3. Defendant Steve Chen, an individual, is believed to be a citizen of the state of California. He can be served with process at the offices of YouTube, LLC, a wholly owned subsidiary of Google Inc., 901 Cherry Avenue, San Bruno, CA 94066.

## II.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction over this lawsuit. Venue in Allegheny County, Pennsylvania is proper because all or substantially all of the acts complained of by Plaintiff occurred in that County. The Court has personal jurisdiction over Defendants because each of them had general and specific contacts with the forum state to satisfy both the Pennsylvania long arm statute and due process under the U.S. Constitution. Specifically, the contract at issue in this lawsuit arose during a telephone call between Defendants in California and Plaintiff in Pennsylvania.

## III.

## FACTUAL ALLEGATIONS

5. Plaintiff came up with the idea, concept and name for "YouTube" while a student at Carnegie Mellon University in 1997. He tried unsuccessfully to find financial backing for a venture starting in 1997 and continuing through mid 2004. In or about mid 2004 he learned of Chad Hurley, who also grew up in Pennsylvania and was working for PayPal at the time. Plaintiff called PayPal and was transferred to Hurley's phone extension in or about November 2004. Plaintiff introduced himself and then explained to Hurley his YouTube business idea. Hurley expressed interest in the idea and the two discussed the concept in detail. Hurley acknowledged that it was Plaintiff's idea, not his. During this conversation Plaintiff told Defendants that he was a college student who did not have the resources to start up the business on his own and had not been able to find investors and

because of that he wanted Hurley and his partner Chen to take the business idea and trade name and pursue the business themselves with the express understanding that if they formed a company and were later able to sell it, they would share with Plaintiff one-percent (1%) of the proceeds received by the founders (Hurley and Chen). Hurley agreed to these terms during the telephone call. Several months later, in or about February 2005 (cell phones records will confirm the precise date), Hurley and Chen called Plaintiff in Pennsylvania to ask Plaintiff more questions about his idea for an internet media sharing venture named YouTube. In or about early 2005, Defendants resigned as employees of PayPal, registered the YouTube domain name and formed a business venture called YouTube. Defendants incorporated the business using the name YouTube, Inc. in or about October 2005. In November 2006, the company was acquired by Google Inc. for over $1.6 billion of Google, Inc. common stock, most of which was received by Defendants. Despite the oral agreement between Plaintiff and Defendants, Defendants refused to pay Plaintiff his one-percent share of the proceeds. Defendants have thus far refused to communicate with Plaintiff or make any effort to honor the contract the parties reached. Plaintiff was entitled to his one-percent share of the sale proceeds received by YouTube's founders (Hurley and Chen) once the transaction was closed in November 2006. As a result of Defendants' breach of contract and fraudulent misrepresentation, Plaintiff has been damaged in an amount believed to exceed $16 million, exclusive of interest and costs. Defendants received hundreds of millions of dollars in marketable stock as a result of Plaintiff's business idea and trade name, and despite a binding agreement that required them to share one-percent of the proceeds received from the sale with the person who came up with the business idea and trade name and shared it with

them in return for that promise of payment (Plaintiff), Defendants kept all the money for themselves while Plaintiff, a struggling college student, endured economic hardship and emotional distress after seeing his idea taken from him without any compensation whatsoever. Defendants' conduct suggests that they never intended to honor the oral contract reached with Plaintiff in November 2004, on which Plaintiff relied to his detriment. In addition to actual damages, Plaintiff seeks exemplary damages equal to three times the amount he was entitled to be paid by Defendants once the company was purchased by Google Inc. in late 2006, which amount is believed to exceed $48 million.

6. Plaintiff admits that he was a naïve college student at the time he spoke to Defendants and obviously today, knowing what he now knows, he would have insisted on a contract in writing signed by the parties. Fortunately for him and others similarly situated, the common law of Pennsylvania recognizes oral contracts as do most if not all other states. The reality is that oral contracts are necessary to keep society and commerce functioning smoothly and efficiently. And when there is evidence that such a contract exists and is breached, it is up to the Court and a jury to decide the law and the facts. Plaintiff seeks a trial by jury of his claims against Defendants.

7. Along with this complaint to be served on Defendants, Plaintiff has included requests for production to each of the Defendants seeking from them and their cell phones carriers all cell phone records reflecting calls placed by Defendants, one or both, to Plaintiff's cell phone number during 2004, 2005 and 2006 as well as calls placed by Plaintiff to Defendants' cell phones. Plaintiff has requested the same records from his cell phone carrier; however, the incoming calls during the relevant time period do not identify the numbers from which the calls to Plaintiff originated. It is believed that

Defendants' cell phone records will identify Plaintiff's cell number and/or reflect outgoing calls to a number at the same times that Plaintiff's cell records show incoming calls from unidentified numbers. These records are significant because they will prove that Hurley and Chen, who live in California, called Plaintiff, a college student at Carnegie Mellon University, just before they launched YouTube as a business. There would have been no reason for them to call him unless they had spoken to him before about the YouTube concept.

8. While a student at Carnegie Mellon University, Plaintiff worked in the communications department of the university, specifically in the Entertainment Technology Center, which was headed up by professors Randy Pausch and Don Marinelli. He also worked on the professors' Synthetic Interview project, a forerunner of the YouTube concept. Plaintiff, a young, creative entrepreneur, was knowledgeable in computer science, design and human-computer interaction, and shared his thoughts and ideas with his teachers on more than one occasion. Although Randy Pausch died in 2008, Don Marinelli can verify that Plaintiff discussed the YouTube concept with him years before Defendants started their business venture in 2005. It was Plaintiff's business concept and trade name that Defendants used to their benefit.

## IV.

## COUNT ONE

## BREACH OF CONTRACT

9. Plaintiff alleges that he entered into an oral contract with Defendants under which Defendants agreed to pay him one-percent (1%) of the proceeds they received as company founders if the YouTube business was purchased by another company. This

oral contract was reached during a specific telephone conversation initiated by Plaintiff in Pittsburgh, Pennsylvania to Hurley and Chen while they were employees of PayPal in California in November 2004. In or about February 2005, Defendants called Plaintiff in Pittsburgh. Chen identified himself and then put Hurley on the line, after which Hurley and Chen talked to Plaintiff asking more questions about the YouTube business concept. They told Plaintiff that they were launching the business but had doubts about whether Plaintiff's idea would work. Plaintiff gave them more advice and encouraged them to stick with the concept. At no time during the conversation did either of them attempt to disavow the agreement reached in November 2004 although they stated for the first time that a friend of theirs named Jawed Karim had thought of the idea too. Defendants later sold YouTube to Google Inc. in November 2006, receiving over a billion and a half dollars of Google stock as proceeds, thus triggering their obligation to share one-percent of the proceeds with Plaintiff. Defendants failed and refused to pay Plaintiff the stock and/or money owed to Plaintiff, which sum is believed to exceed $16 million. This breach occurred in November 2006 when the sale of YouTube closed and funded, and it was at this point that Plaintiff suffered damage in Pennsylvania as a proximate result of Defendants' breach. Plaintiff sues for all proceeds due him, along with prejudgment and post judgment interest at the highest rate rate allowed by law plus court costs.

V.

<b>FRAUDULENT MISREPRESENTATION</b>

10.     Defendants' conduct after the YouTube sale was closed indicates a conscious effort on the part of Defendants to disavow the oral contract they made with Plaintiff. This further suggests that Defendants entered into the oral contract with Plaintiff with

actual intent not to honor it if the company later sold and money was made. This misrepresentation was fraudulent when made and induced Plaintiff to cease all efforts to pursue his YouTube business concept and instead rely on Defendants to pursue the idea knowing that he would share a small part of any success the business had. As a proximate result of his detrimental reliance and Defendants' fraudulent misrepresentations, Plaintiff has been damaged. Plaintiff was utterly crushed when he learned that Defendants had taken his idea and trade name, ignored their agreement with him and successfully sold the company for over $1.6 billion. Besides the financial harm he suffered, Plaintiff endured severe mental anguish, feeling helpless and unable to do anything to right the injustice perpetrated against him by Defendants. As a consequence of Defendants' fraudulent conduct Plaintiff seeks exemplary damages equal to three times the amount he was entitled to receive under his contract with Defendants, which amount is believed to exceed $48 million – still only a fraction of what Defendants received when YouTube was sold to Google Inc.

## PRAYER

For the reason set forth in this complaint Plaintiff requests that Defendants, each of them, be cited to appear and answer this lawsuit; that the Court permit the requested discovery of Defendants' cell phone records during the relevant time period along with all other necessary and relevant discovery; that the case be set down for trial by jury; and at the conclusion of the trial that the Court enter judgment against Defendants Chad Hurley and Steve Chen, jointly and severally, for full actual damages, exemplary damages, prejudgment interest and post judgment interest at the highest rate permitted by

law, court costs and such other and further relief to which Plaintiff may show himself justly entitled.

                Respectfully submitted,

                _____

                Herbert Elwood Gilliland, III

IN THE COURT OF COMMON PLEAS OF
ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| HERBERT ELWOOD GILLILAND, III | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff, | ) | G.D. NO. 09-021018 |
| | ) | |
| V. | ) | |
| | ) | CODE: _____ |
| CHAD HURLEY and STEVE CHEN | ) | |
| | ) | JURY DEMANDED |
| Defendants. | ) | |

### PLAINTIFF'S FIRST INTERROGATORY AND REQUESTS FOR PRODUCTION OF DOCUMENTS

#### INTERROGATORIES

1. Identify each cellular phone carrier used by Chad Hurley (personal and/or business use) from October 1, 2004 through March 31, 2005.

ANSWER:


2. Identify each cellular phone carrier used by Steve Chen (personal and/or business use) from October 1, 2004 through March 31, 2005.

ANSWER:


#### REQUESTS FOR PRODUCTION

1. All of Chad Hurley's cellular phone records, which include the time, date and telephone numbers of all incoming and outgoing calls from October 1, 2004 through March 31, 2005.

RESPONSE:

2. All of Steve Chen's cellular phone records, which include the time, date and telephone numbers on all incoming and outgoing calls from October 1, 2004 through March 31, 2005.

RESPONSE:

Respectfully submitted,

_____

Herbert Elwood Gilliland, III
